Bear Mill Manufacturing Co., Inc. v. Commissioner.
Bear Mill Mfg. Co. v. Commissioner
Docket No. 6805.
United States Tax Court
1946 Tax Ct. Memo LEXIS 215; 5 T.C.M. (CCH) 289; T.C.M. (RIA) 46084; April 18, 1946
*215 William O. Robertson, Esq., 1 Wall St., New York, N. Y., for the petitioner. Bernard J. Long, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner seeks redetermination of deficiencies for 1941 in income and excess profits tax in the amounts of $7,221.52 and $21,304.78, respectively. The sole question involved is what constitutes reasonable compensation for the officer-stockholders of petitioner. Findings of Fact Petitioner is a New York corporation with its principal office at 470 Fourth Avenue, New York, New York. Its tax returns for the period here in question were filed with the collector of internal revenue for the second district of New York. Petitioner has been in the business of cotton goods converter for more than 70 years. Its business is buying gray cloth from the manufacturers of the raw fabric and processing it into finished goods for resale. In 1936 all of its stock was acquired in equal portions by Alex Barth, Morris Poley, Harry Zimmerman, and Robert Wertheimer. The stock ownership has continued in these four individuals in equal portions to the present time. They are also officers *216 and directors of petitioner, and they devote their time and efforts to operating petitioner's business. They spent all of their working time in this manner. Barth is the president and executive head. He established the merchandising policies and determined the periods for purchasing of cloth. He also had general charge of the company's affairs. Poley is vice president and head of the curtain goods department. He made purchases of fabrics for this department, designed curtain materials, supervised sales, and did some selling. In 1941 there were two salesmen in New York and some outside of New York under his supervision. The net sales of this department in 1941 were $2,430,000, of which Poley sold $1,507,000. Zimmerman is treasurer and in charge of the underwear department. He purchased fabrics for this department and was in charge of their conversion. He also engaged in selling and had three salesmen in New York City and four or five outside under his supervision. In 1941 the net sales of this department amounted to $1,657,000, of which Zimmerman sold $928,000. Wertheimer is manager of the print goods department and was in charge of the merchandising and managing of sales. He *217 worked with another man in this department. Wertheimer designed the print goods which, together with the selection of styles, consumed the greater part of his time. There were between six and eight salesmen in this department, the net sales of which amounted to $429,600 in 1941. Wertheimer sold some goods. The following is a schedule showing the net sales, the net profit after deduction for compensation to officers and the amounts paid to the officers by petitioner for the years 1936 to 1941, inclusive: Net profits
Compen-
after deduction
sation
of compensa-
paid to
Net sales
tion to officers
officers
1936
$3,152,236.34
$ 26,844.22
$35,800.00
1937
3,278,339.52
2,274.01
49,952.08
1938
3,354,188.65
2,389.21
45,000.00
1939
3,837,546.98
6,089.94
33,200.00
1940
4,073,684.88
4,875.66
34,000.00
1941
5,849,406.10
196,623.14
94,115.43
The Bureau of Internal Revenue took exception to the compensation paid by petitioner to the four officers in the year 1937 and the deduction claimed for that year in the amount of $49,952.08 was reduced to $42,000, which amount was agreed upon as reasonable compensation for the officers for *218 that year. The following is a schedule of the salaries and bonuses paid to petitioner's officers during the years 1936 to 1941, inclusive: Year
Salary
Bonus
Total
Alex Barth
1936
$7,800.00
$ 2,500.00
$10,300.00
* 1937
7,500.00
6,452.08
13,952.08
1938
7,500.00
3,750.00
11,250.00
1939
7,500.00
800.00
8,300.00
1940
7,500.00
1,000.00
8,500.00
1941
7,500.00
15,000.00
22,500.00
Morris Poley
1936
$6,000.00
$ 2,500.00
$ 8,500.00
* 1937
7,500.00
4,500.00
12,000.00
1938
7,500.00
3,750.00
11,250.00
1939
7,500.00
800.00
8,300.00
1940
7,500.00
1,000.00
8,500.00
1941
7,500.00
15,000.00
22,500.00
Harry Zimmerman
1936
$6,000.00
$ 2,500.00
$ 8,500.00
* 1937
7,500.00
4,500.00
12,000.00
1938
7,500.00
3,750.00
11,250.00
1939
7,500.00
800.00
8,300.00
1940
7,500.00
1,000.00
8,500.00
1941
7,500.00
15,000.00
22,500.00
Robert Wertheimer
1936
$6,000.00
$ 2,500.00
$ 8,500.00
* 1937
7,500.00
4,500.00
12,000.00
1938
7,500.00
3,750.00
11,250.00
1939
7,500.00
800.00
8,300.00
1940
7,500.00
1,000.00
8,500.00
1941
7,500.00
15,000.00
22,500.00
*219 In addition to the salary of $7,500 paid by petitioner to Barth, there was paid the additional sum of $4,115.43 in 1941, which respondent has allowed, as well as a bonus of $3,750, as being reasonable compensation for his services. The following is a schedule showing amounts paid to the officers by petitioner in 1941 and the amounts allowed by respondent: Paid
Allowed
Alex Barth
$26,615.43
$15,365.43
Morris Poley
22,500.00
11,250.00
Harry Zimmerman
22,500.00
11,250.00
Robert Wertheimer
22,500.00
11,250.00
$94,115.43
$49,115.43
The increased sales and net profit of petitioner in 1941 over that of prior years were occasioned by the decision of the management in 1940 to make heavy purchases of material in anticipation of increased demands during the year 1941. The anticipated demand for 1941 materialized and the merchandise on hand enabled petitioner to meet the demand. Petitioner has never paid a dividend in any year, including the taxable year 1941. During the years 1937 to 1940, petitioner paid out practically its total net profit for the respective years to the four respective officer-stockholders as salaries and bonuses. During the year *220 1941 petitioner had 21 employees of more than one year's service who earned salaries ranging from $877.90 to $2,523.96 per annum to whom petitioner paid bonuses of from approximately 4 percent to approximately 43 percent thereon, the average being approximately 18 percent. In 1941 petitioner had 13 employees of less than one year's service to whom it paid salaries ranging from $168 to $963.88, to whom it paid bonuses of from approximately 4 percent to approximately 29 percent thereon, the average being approximately 15 percent. Reasonable compensation for services actually rendered during 1941 by Barth was in the amount claimed, and for Poley, Zimmerman, and Wertheimer was $15,000 each. Opinion Cases of this nature, requiring the determination of a reasonable amount payable as salaries to corporate employees who were also stockholders, are primarily questions of fact. Ridgewood Provisions, Inc., 6 T.C. 87 (Jan. 18, 1946). Our ultimate finding disposes of that question, and perhaps no further discussion would be required. It may be said, however, that we have based the figures adopted largely on the testimony of the witnesses produced and vouched for by the petitioner. *221 In each case we have taken the lower of the two limits to which they testified. The burden of proof lies with the petitioner, and it would appear reasonable to give the evidence an interpretation no more favorable than the most stringent which petitioner's own witnesses were willing to attribute to it. In the case of petitioner's president, we have accepted the amount claimed, that being lower than the figures to which petitioner's witnesses subscribed. Although the amounts allowed are less than those claimed except in the one instance, they are in every case more than respondent has approved. We cannot overlook the fact that petitioner's gross sales and net profits increased radically during the year before us. Some variation in the salaries in prior years to correspond with the volume of business and profits appears to have been accepted by respondent. No evidence was produced by him to rebut that introduced by petitioner. But to three of the officers he allowed no greater bonus than the highest previously paid - when gross sales were about one-half and net profits about one-tenth of the year in issue. As we said Ridgewood Provisions, Inc., supra: * * * The failure *222 to disallow a claimed deduction is not, we think, the equivalent of an allowance. Nor is the failure of respondent with respect to a claimed deduction in one taxable year binding in a subsequent and different tax period. Nevertheless, it is an evidentiary fact to be considered along with the other circumstances. On the whole record we have arrived at the amount set forth in our findings as being reasonable compensation for the services shown to have been performed. Decision will be entered under Rule 50. Footnotes
*. The amounts paid in 1937 were agreed to be excessive to the extent of $7,952.08.↩